# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-13-00155-CR
_____

### DEADRIAN GAINOUS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Cause No. 22115**

## MEMORANDUM OPINION

Deadrian Gainous pleaded guilty to assault on a public servant after the trial court denied his written motion to dismiss the indictment based upon alleged spoliation of evidence by the State. *See* Tex. R. App. P. 25.2(a)(2)(A) (A plea-bargaining defendant may appeal matters raised by written motion filed and ruled on before trial.). In his sole appellate issue, Gainous challenges the trial court's denial of his motion to dismiss the indictment. We affirm the trial court's judgment of conviction.

1

Gainous's motion explained that the incident took place at the Polunsky Unit of the Texas Department of Criminal Justice (TDCJ), where Gainous was incarcerated, when an officer was attempting to re-house Gainous. Gainous asserted in the motion that when the door of his cell was opened, an altercation occurred, and the TDCJ—Office of the Inspector General ("OIG") initiated an investigation, which led to the filing of the charge against Gainous. In his motion to dismiss, Gainous contended that "[v]ideo footage existed that depicted [Gainous]'s use of self defense to protect himself from bodily harm threatened by an officer[,]" but although the State was aware of the video's "exculpatory value", the video was nevertheless destroyed pursuant to TDCJ's retention policy.

Lacey Mericle, an investigator for the OIG when the offense occurred, was assigned to investigate the incident involving Gainous and a correctional officer. Mericle testified that Gainous came out of his cell in the Polunsky Unit and assaulted the officer by striking the officer with closed fists. Mericle explained, "As soon as I was notified of the offense, I would have tried to get video footage of the incident, to speak with the victim, any possible witnesses that might have been in the area, speak with the suspect." Mericle testified that she received correspondence from Gainous's mother, in which Gainous's mother stated that Gainous claimed that he was defending himself against a prison guard who

instigated the fight, and she requested a copy of the videotape evidence of the incident. Mericle explained that she was aware that a videotape existed when she began her investigation. Mericle had full access to the videotape of the incident, and she explained that she viewed approximately ten minutes of the videotape before reaching the portion of the videotape that contained the incident. Mericle requested preservation of the portion of the videotape that showed "the actual offense." According to Mericle, there was nothing on the videotape that depicted the victim and Gainous leading up to the incident, so she only requested that the videotape of the incident between the victim and Gainous be preserved.

Michael Butcher, assistant warden at the Polunsky Unit, testified that he is familiar with the surveillance equipment located around the unit, as well as the policies and procedures related to the surveillance equipment. According to Butcher, although the unit does not have a retention policy, the system is set up to maintain up to twenty-one days of surveillance footage, after which time the storage is full and the older footage is deleted to make room for new footage. If the unit determines that some footage should be maintained, that footage is recorded from the hard drive and is maintained as a video file. Butcher testified that when defense counsel requested six hours of video footage (from 8:00 p.m. on July 19 to 2:00 a.m. on July 20), Butcher was unable to provide what was requested because

3

it was no longer available, since more than twenty-one days had passed, but he instead only produced the portion that contained the assault itself. Butcher explained that the screen indicator turns red when there is motion in a frame, so the retained recording began when the system detected motion (that is, when the officer entered the area where Gainous was being held) and stopped when the assault ended.

The State stipulated that other inmates have alleged that the victim was aggressive on other occasions. Butcher testified that if any video had indicated that the officer provoked Gainous, that video would have been kept. Butcher testified that when the video was reviewed, "there doesn't appear to be any tense situation there" between Gainous and the officer, and there is no audio on the video. Butcher testified that the video produced "was the entire incident[,] not just a snippet of the incident." Butcher testified that to his knowledge, nothing relevant went on in the six hours of video surrounding the incident, either before or after the incident. Butcher explained that the OIG ultimately determines what video to retain. According to Butcher, Gainous could have requested retention of portions of the video during the disciplinary process, since that process typically occurs within twenty-one days.

4

In determining whether the pretrial destruction of evidence constitutes a denial of due process, the Supreme Court has distinguished between "material, exculpatory evidence" and "potentially useful evidence." *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). A due process violation occurs when the State destroys material, exculpatory evidence, regardless of whether the State acted in bad faith. *Id*. at 57. However, when the State destroys potentially useful evidence, as opposed to material exculpatory evidence, the appellant must show that the State acted in bad faith in destroying the evidence. *Id*. at 58; *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010). The presence or absence of bad faith turns on the State's knowledge of the exculpatory value of the evidence at the time it was destroyed. *Youngblood*, 488 U.S. at 56 fn.*; *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Ex parte Napper*, 322 S.W.3d at 230.

Gainous has not demonstrated that the recording would have been exculpatory; on the contrary, both Mericle and Butcher testified that the videotape depicted no relevant interactions between the victim and Gainous prior to the assault, and Butcher testified that the videotape did not include an audio recording. In addition, Gainous has not demonstrated that the State acted in bad faith, *i.e.*, had an improper motive in destroying the videotape, such as animus toward Gainous or

5

a conscious attempt to suppress evidence. *See Ex parte Napper*, 322 S.W.3d at 232. Rather, the testimony at the hearing indicated that the State had preserved the videotape of the assault itself, neither Mericle nor Butcher found any relevant evidence on the videotape from before the incident occurred, and the videotape was unavailable because the Polunsky Unit only had the capability to store video surveillance footage for twenty-one days. Accordingly, we overrule Gainous's sole issue and affirm the trial court's judgment of conviction.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on August 7, 2013
Opinion Delivered September 18, 2013
Do Not Publish

Before McKeithen, C.J., Gaultney and Horton, JJ.